IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>AKORN HOLDING COMPANY, ET AL.,<br><br>Debtors[1]. | Chapter 7<br><br>Case No. 23-10253-KBO<br>(Jointly Administered) |
| GEORGE L. MILLER, solely in<br>his capacity as the Chapter 7 Trustee of<br>AKORN HOLDING COMPANY, ET AL.,<br><br>Plaintiff,<br>v.<br><br>JOHN SWEENEY,<br><br>Defendant. | Adv. Pro. No. _____ |

**TRUSTEE'S COMPLAINT FOR AVOIDANCE AND RECOVERY OF
TRANSFERS PURSUANT TO 11 U.S.C. §§ 544, 548 AND 550**

Plaintiff, George L. Miller, the chapter 7 trustee (the "Trustee") for the bankruptcy estate of Akorn Holding Company, et al. ("AKORN", or the "Debtors"), by and through his attorneys, Ciardi Ciardi & Astin, as and for his complaint against John Sweeney ("Defendant"), hereby alleges as follows:

**NATURE OF THE ACTION**

1. The Trustee brings this action against the Defendant to avoid and recover certain transfers made by the Debtors to the Defendant that occurred during the two year period prior to the date of commencement of the Debtors' bankruptcy proceedings and to recover the value thereof.

---

[1] The Debtors in these chapter 7 cases, along with the last four digits of their federal tax identification numbers and case numbers are Akorn Holding Company LLC (9190), Case No. 23-10253(KBO); Akorn Intermediate Company LLC (6123), Case No. 23-10254(KBO); and Akorn Operating Company LLC (6184), Case No. 23-10255. The Debtors' corporate headquarters were located at 5605 CenterPoint Court, Gurnee, IL 60031.

## JURISDICTION, VENUE AND PREDICATES FOR RELIEF

2. The United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") has subject matter jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334(b).

3. This adversary proceeding has been referred to the Bankruptcy Court pursuant to 28 U.S.C. § 157(a).

4. This adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(F).

5. The Trustee agrees to entry of a final order or judgment by the Bankruptcy Court in this adversary proceeding.

6. Venue is proper in the Bankruptcy Court pursuant to 28 U.S.C. § 1409(a) because this is a proceeding related to and arising under Title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code").

7. The Bankruptcy Court has personal jurisdiction over the Defendant pursuant to Rule 7004(f) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

8. Upon information and belief, and according to the Debtors' books and records, the Defendant has a residence addresses of 12224 Dorrance Court, Reston, VA 20190.

9. The predicates for the relief sought herein are sections 544, 538 and 550 of the Bankruptcy Code and Bankruptcy Rule 7001.

10. Pursuant to sections 323(b) and 704(a)(1) of the Bankruptcy Code, the Trustee has standing to litigate affirmative claims of and object to claims asserted against the Debtors.

## BACKGROUND

11. On February 23, 2023 (the "Petition Date"), the Debtors filed voluntary petitions for relief under Chapter 7 of the Bankruptcy Code in the Bankruptcy Court.

12. On or about February 23, 2023, the United States Trustee appointed George L. Miller as Trustee of the Debtors' estates and is presently so acting. As the chapter 7 trustee for the Debtors' jointly administered estates, Plaintiff has the authority to investigate the acts, conduct, assets, liabilities, and financial condition of the Debtors and litigate affirmative claims of and object to claims asserted against the Debtors pursuant to 11 U.S.C. § 704.

13. Upon information and belief, Defendant was, at all relevant times, an Officer of the Debtors.

14. Before the Petition Date, the Debtors' business included developing, manufacturing, and marketing specialty pharmaceuticals, including prescription, consumer health, and animal health products. The Debtors were industry leaders in branded and generic products in alternate dosage forms such as ophthalmic, injectables, oral liquids, topicals, inhalants and nasal sprays. The Debtors no longer operate their business, and Plaintiff is in the process of liquidating the Debtors' assets.

15. The Debtors maintained at least five bank accounts at Bank of America, N.A. (the "Bank Accounts"). Between February 23, 2022 and February 23, 2023 (the "Transfer Period"), the Debtors continued to operate their businesses and, in connection therewith, make disbursements or other transfers of property, whether by checks, cashier's checks, wire transfers, ACH transfers, direct deposits, or otherwise to various entities for goods and services used to purportedly facilitate their business operations.

16. In the two (2) years preceding the Petition Date, Debtor Akorn Operating Company LLC entered into letter agreements ("Retention Bonus Agreements") which provided for the payment of retention bonuses (the "Avoidable Retention Bonuses") and excessive and unjustified salary increases (the "Avoidable Salary Increases") all at a time when the Defendant

and Debtors, and members of the Board, were aware that the Debtors were hopelessly insolvent as set forth in Exhibit "A".

17. The Retention Agreements and Retention Bonuses were provided to the Defendant in exchange for no consideration or for less than reasonably equivalent value.

18. On or around January 25, 2023, Debtor Akorn Operating Company LLC entered into Retention Bonus Agreements with the Defendant in an effort to retain employees for a prospective Chapter 11 bankruptcy, which did not materialize. The Defendant's employment lasted less than thirty days after entering into the Retention Bonus Agreements. Further, the Retention Bonus Agreements did not establish any milestones or other performance conditions in exchange for the Defendant receiving the Avoidable Retention Bonuses.

19. In or around November 2022 (a mere three months before the Petition Date and at a time the Debtors were preparing for a bankruptcy filing), Defendant received the Avoidable Salary Increases by way of a substantial annual salary increase from $425,000 to $725,000, or 71%.

20. The Trustee avers that the Avoidable Salary Increases weren't justified and were not a reasonably equivalent exchange of value and is subject to avoidance.

21. The Debtors did not receive reasonably equivalent value for the (a) Retention Bonus Agreements, the Avoidable Retention Bonuses or the Avoidable Salary Increases.

22. According to the Schedules and Bank Accounts, Debtor Akorn Operating Company LLC made the Avoidable Retention Bonuses and the Avoidable Salary Increase from an interest of the Debtor Akorn Operating Company LLC's property through payments to Defendant during the Transfer Period (collectively the "Avoidable Transfers"). The Avoidable Transfers are more fully set forth on **Exhibit A** attached hereto.

4

23. Plaintiff has also performed his own due diligence evaluation of the reasonably knowable affirmative defenses available to Defendant. As part of that due diligence and where reasonably available, Plaintiff or his professionals reviewed the Debtors' books and records in his possession applicable to the Defendant. Any applicable consideration that the Trustee gave to Defendant's potential defenses are based on data gleaned from the Debtors' books and records available and applicable to each Defendant, which calculations may be subject to adjustment or otherwise conflict with Defendant's records.

24. Based upon Plaintiff's review of the information, if any, provided by any Defendant prior to filing this Complaint, and after performing Plaintiff's own due diligence evaluation of reasonably knowable affirmative defenses to avoidance of the Avoidable Transfer(s), Plaintiff has determined that Plaintiff may avoid some or all of the Avoidable Transfers even after taking into account each Defendant's potential affirmative defenses.

25. During the course of this adversary proceeding, Plaintiff may learn (through discovery or otherwise) of additional transfers made to or for the benefit of Defendant during or before the Transfer Period that are avoidable under sections 544 or 548 of the Bankruptcy Code. Plaintiff intends to avoid and recover all such transfers made to or for the benefit of Defendant or any other transferee during the Transfer Period. Plaintiff reserves the right to amend this Complaint to include, without limitation: (i) further information regarding the Avoidable Transfers (as defined below), (ii) additional transfers made during or before the Transfer Period, (iii) additional defendants, (iv) modifications of or revision to Defendant's name, and (v) additional causes of action, if applicable (collectively, the "Amendments"), that may become

known at any time during this Adversary Proceeding, through formal discovery or otherwise, and intends for any such Amendments to relate back to this Complaint.

26. During the Transfer Period, the Debtors (i) began to fall behind on payments to their vendors but continued to incur debts that the Debtors were unable to pay as they came due, (ii) had outstanding liabilities that exceeded the fair value of the Debtors' assets, and (iii) had insufficient capital, and insufficient access to capital, to continue operating their businesses. The Defendant's employment lasted less than thirty days after entering into the Retention Bonus Agreements. Further, the Retention Bonus Agreements did not establish any milestones or other performance conditions in exchange for the Defendant receiving the Avoidable Retention Bonuses.

27. The Debtors' also undertook a robust pre-petition marketing effort to sell the Debtors' assets. No interested party submitted a bid that would have fully satisfied the Debtors' secured creditors let alone all of the Debtors' creditors, evidence that the Debtors' liabilities exceeded the fair value of the Debtors' assets, both individually and on a consolidated basis throughout the Transfer Period.

28. Indeed, the Schedules show that at least as of the Petition Date, their liabilities vastly outsized their assets. *See* D.I.[2] 70 (showing $0.00 in assets against $5,651,500.04 in liabilities for Debtor Akorn Holding Company LLC, Case No. 23-10253); D.I. 72 (showing $0.00 in assets against $181,111,238.42 in liabilities for Debtor Akorn Intermediate Company LLC, Case No. 23-10254); D.I. 74 (showing $222,690,796.15 in assets against $313,431,159.74 in liabilities for Debtor Akorn Operating Company LLC, Case No. 23-10255).

---

[2] Any references to "D.I." herein refer to the docket in Case No. 23-10253.

29. During the pendency of the chapter 7 cases, the Court entered orders authorizing the sale of substantially all of the Debtors' non-litigation assets. Following these sales, the Trustee sought, and obtained, authority to make an interim distribution to holders of allowed unsecured claims against the Debtors, which interim distribution provided such creditors with a 19.2% recovery on their respective claim amounts. *See* D.I. 1000 at ¶ 12; D.I. 1023.

30. Upon information and belief, based on Plaintiff's liquidation of the Debtors' non-litigation assets and the projected recoveries from the Debtors' litigation assets, general unsecured creditors will not be paid in full in the chapter 7 cases.

31. The Avoidable Transfers were made on the dates indicated on Exhibit "A".

32. The Avoidable Transfers were listed on the Debtors' Statement of Financial Affairs or in the books and records of the Debtors as transfers made by and between the Debtors and the Defendant.

**FIRST CLAIM FOR RELIEF**
**AVOIDANCE OF FRAUDULENT TRANSFER UNDER 11 USC SECTION 548**

33. Trustee incorporates by reference each of the allegations set forth in the paragraphs above as if fully set forth herein at length.

34. Section 548 of the Bankruptcy Code provides, in pertinent part, as follows:

   a. (1) The trustee may avoid any transfer (including any transfer to or for the benefit of an insider under an employment contract) of an interest of the debtor in property, or any obligation (including any obligation to or for the benefit of an insider under an employment contract) incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily—

      (A) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or

      (B) (i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

7

      (ii)

    I.    was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

    II.    was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital;

    III.    intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured; or

    IV.    made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.

35. Debtor Akorn Operating Company, LLC made the Avoidable Transfers to the Defendant.

36. The Debtors received less than a reasonably equivalent value in exchange for the Avoidable Transfers.

37. The Debtors were either (i) insolvent on the date the Avoidable Transfers occurred or (ii) became insolvent as a result of such Avoidable Transfers.

38. The Avoidable Transfers were made to or for the benefit of the Defendant (Insiders) under an employment contract and not in the ordinary course of business. Accordingly, the Avoidable Transfers were fraudulent, and the Trustee is entitled to avoid the Transfers pursuant to 11 U.S.C. § 548.

## SECOND CLAIM FOR RELIEF
## AVOIDANCE OF FRAUDULENT TRANSFERS UNDER 11 U.S.C. § 544 AND ILCS 160/5 and 160/6

39. The Trustee repeats and realleges each of the allegations set forth in the paragraphs above as if fully set forth herein.

40. Section 544 of the Bankruptcy Code provides:

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists;

(2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists; or

(3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

(b) (1) Except as provided in paragraph (2), the trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502 (e) of this title.

(2) Paragraph (1) shall not apply to a transfer of a charitable contribution (as that term is defined in section 548 (d)(3)) that is not covered under section 548 (a)(1)(B), by reason of section 548 (a)(2). Any claim by any person to recover a transferred contribution described in the preceding sentence under Federal or

State law in a Federal or State court shall be preempted by the commencement of the case.

*See* 11 U.S.C. § 544.

    41.    Furthermore, 740 ILCS 160/5 is a section of the Illinois Uniform Fraudulent Transfer Act and states as follows:

> Sec. 5. (a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>     (1) with actual intent to hinder, delay, or defraud any creditor of the debtor; or
>     (2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
>         (A) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
>         (B) intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

    42.    740 ILCS 160/6 further states as follows:

> Sec. 6. (a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.
>
>     (b) A transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time, and the insider had

reasonable cause to believe that the debtor was insolvent.

43. Debtor Akorn Operating Company, LLC made the Avoidable Transfers to the Defendant.

44. The Debtors did not receive a reasonably equivalent value in exchange for the Avoidable Transfers.

45. At the time of the Avoidable Transfers, the Debtors were engaged or was about to engage in a business or a transaction for which the remaining assets of the Debtors were unreasonably small in relation to the business or transaction.

46. Accordingly, the Avoidable Transfers were fraudulent, and the Trustee may avoid the Avoidable Transfers.

### THIRD CLAIM FOR RELIEF
### AVOIDANCE OF FRAUDULENT TRANSFERS UNDER 11 U.S.C. § 544 AND 70 DEL. LAWS. §§ 1304 AND 1305

47. The Trustee repeats and realleges each of the allegations set forth in the paragraphs above as if fully set forth herein.

48. The Trustee repeats and realleges 11 U.S.C. § 544 as set forth in averment 40.

49. Furthermore, 70 Del. Laws. § 1304 is a section of the Delaware Uniform Fraudulent Transfer Act and states as follows:

> Transfers fraudulent as to present and future creditors.
>
> (a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
>   (1) With actual intent to hinder, delay or defraud any creditor of the debtor; or
>
>   (2) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

11

       a. Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

       b. Intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

50.     70 Del. Laws. § 1305 further states as follows:

Transfers fraudulent as to present creditors.

       (a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

       (b) A transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time and the insider had reasonable cause to believe that the debtor was insolvent.

51.     Debtor Akorn Operating Company, LLC made the Avoidable Transfers to the Defendant.

52.     The Debtors did not receive a reasonably equivalent value in exchange for the Avoidable Transfers.

53.     At the time of the Avoidable Transfers, the Debtors were engaged or was about to engage in a business or a transaction for which the remaining assets of the Debtors were unreasonably small in relation to the business or transaction.

54.     Accordingly, the Avoidable Transfers were fraudulent, and the Trustee may avoid the Avoidable Transfers.

**FOURTH CLAIM FOR RELIEF**
**RECOVERY OF AVOIDABLE TRANSFERS PURSUANT TO 11 U.S.C. § 550**

55.     The Trustee repeats and realleges each of the allegations set forth in paragraphs 1

through 54 hereof as if fully set forth herein.

56. Defendant was the initial transferee of the Avoidable Transfers, the intermediate or mediate transferee of the Avoidable Transfers, or the person or entity for whose benefit the Avoidable Transfer(s) was/were made.

57. Each Avoidable Transfer that is avoided under section 544 and 548 of the Bankruptcy Code is recoverable pursuant to section 550 of the Bankruptcy Code.

58. Subject to potential defenses, the Trustee is entitled to recover the value of the Avoidable Transfers pursuant to section 550(a) of the Bankruptcy Code.

## RESERVATION OF RIGHTS

The Trustee reserves the right to review and/or supplement this Complaint based on the Proof of Claim filed by the Defendant and any possible objection thereto.

## PRAYER FOR RELIEF

WHEREFORE, for the foregoing reasons, the Trustee demands judgment as follows:

A. Pursuant to the Claims for Relief, entering judgment against the Defendant under sections 544, 548 and 550 of the Bankruptcy Code and in favor of the Trustee avoiding and recovering the Transfers in an amount not less than as set forth on Exhibit "A"; and

B. Awarding the Trustee post judgment interest at the maximum legally applicable rate; and

C. Granting the Trustee such other and further relief the Court deems just and appropriate.

Dated: February 21, 2025
Wilmington, Delaware

CIARDI CIARDI & ASTIN

*/s/ John D. McLaughlin, Jr.*
John D. McLaughlin, Jr.
No. 4123
Ciardi Ciardi & Astin
1204 N. King Street
Wilmington, DE 19801
Telephone: 484-437-2676
Email: jmclaughlin@ciardilaw.com

-and-

Albert A. Ciardi, III, Esquire
1905 Spruce Street
Philadelphia, PA 19103
(215) 557-3550 telephone
(215) 557-3551 facsimile
aciardi@ciardilaw.com
*Counsel to George L. Miller,
Chapter 7 Trustee*

14